UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-357

| | |
|---|---|
| ANTOINETTE L. TIMS, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| CAROLINAS HEALTHCARE SYSTEM d/b/a CHARLOTTE OB & GYN ASSOCIATES – ARBORETUM, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Defendant's Motion to Dismiss (Doc No. 8) Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). For the reasons stated below, Defendant's Motion is GRANTED in part and DENIED in part.

I. BACKGROUND

On May 1, 2013, Plaintiff filed a complaint in Mecklenburg County Superior Court against Carolinas Healthcare System ("CHS") and Kari Vanderweerken. (Doc. No. 1, Exh. A.) After removing the case to this Court, Defendant CHS filed a Motion for a More Definite Statement (Doc. No. 2) and Defendant Vanderweerken filed a Motion to Dismiss (Doc No. 3). Plaintiff did not respond. Judge Keesler's Chambers contacted Plaintiff's counsel to inquire generally as to whether any response was forthcoming (Doc. No. 6.) Plaintiff's counsel subsequently filed a Motion for Extension of Time to Respond to Defendants' Motions (Doc. No. 4.) In denying Plaintiff's motion, this Court stated that "Plaintiff's counsel is cautioned that further failures to abide by the Standing Orders of this Court could result in sanctions and/or

1

dismissal of the Complaint." (Doc. No. 6, 2.) The Court dismissed Vanderweerken from the Complaint and granted Defendant's Motion for a More Definite Statement. (Doc. No. 6.)

Plaintiff's Amended Complaint was due on Friday, July 26, 2013. Despite this Court's previous warning, counsel failed to file it until Tuesday, July 30, 2013. (Doc. No. 7.) Counsel for Plaintiff admitted that the "amended complaint was filed four days late as a result [of his] difficulties with the Court's electronic filing system." (Doc. No. 9.) In an affidavit, counsel explained that he "prepared an amended complaint and attempted to file it . . . on July 26, 2013," but due to termination of his e-mail address, he "was not able to file the amended complaint with the system." (Doc. No. 9-1.) However, in this case, counsel at least e-mailed the amended complaint to defense counsel by the filing deadline and resolved his computer issues via the clerk's office by Tuesday, July 30, 2013. (Doc. No. 9-1.)

In the Amended Complaint, Plaintiff alleges claims for "disparate treatment," "racially hostile work environment," "retaliation," "state law racial discrimination," and "violation of the Family Medical Leave Act" ("FMLA"). (Doc. No. 7.) Plaintiff claims that Defendant hired her in 1999 and that during the course of her employment, she "received annual job reviews and was consistently rated a 'successful performer.'" (Id., ¶ 9.) Plaintiff alleges that in 2011, she started reporting to Vanderweerken and that she "was the only African-American female under Ms. Vanderweerken's supervision." (Id., ¶ 12.) Plaintiff further asserts that Vanderweerken "treated Plaintiff differently than the other employees under her supervision." (Id., ¶ 13.) Specifically, Plaintiff alleges that Vanderweerken accused her of "not working and would snap her fingers at Plaintiff" because "that is the only way 'you people will listen.'" (Id.) Plaintiff alleges that Vanderweerken disciplined Plaintiff for using the office telephone for personal calls even though

2

Plaintiff allegedly "did not use the telephone for personal use any more than her co-workers." (Id., ¶ 14.) Vanderweerken allegedly "stated that she had to watch Plaintiff carefully because 'y'all blacks are sneaky people' and are always trying to get around the rules." (Id.) Additionally, Plaintiff claims that Defendant "disciplined [her] for missing work to care for her son and interfered with Plaintiff taking FMLA leave." (Id., ¶ 39.) However, at no point does Plaintiff state how she was disciplined besides being terminated.

Plaintiff asserts that she complained about Vanderweerken's behavior to Vanderweeken's superiors, but they "failed to take any action to resolve the situation" besides notifying Vanderweerken of Plaintiff's complaints. (Id., ¶ 15.) Vanderweerken allegedly became angry and "told Plaintiff that she would start playing 'hardball' to get rid of Plaintiff." (Id.) Plaintiff also alleges that she "was denied promotions and pay increases for which she was qualified." (Id., ¶ 19.) Finally, Plaintiff alleges that she filed an Equal Employment Opportunity Charge of Discrimination ("EEO Charge") against Defendant "[o]n or about May 30, 2012," and "[o]n June 4, 2012, Plaintiff was fired . . . in part in retaliation for filing the discrimination complaint." (Id., ¶ 27-28.)

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must provide enough facts to state a claim to relief that is plausible on its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The court must "accept as

3

true all well-pleaded allegations" and "construe the factual allegations in the light most favorable to the plaintiff." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citing Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, the Court is "not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." Id. While a plaintiff alleging employment discrimination need not "plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555 (2007)).

### III.  ANALYSIS

Plaintiff alleges five causes of action: Disparate Treatment, Racially Hostile Work Environment, Retaliation, State Law Racial Discrimination, and Violation of the Family Medical Leave Act ("FMLA"). Defendant has moved to dismiss all claims. The Court will address each cause of action separately.

**A. Disparate Treatment**

Title VIII provides that it is unlawful "for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Under her claim for "Disparate Treatment," Plaintiff alleges that she "was denied promotions and pay increases for which she was qualified," "was singled out for discipline and disparate treatment on account of her race," and "was terminated from her employment on account of her race." (Doc. No. 7, ¶¶ 19-21.) Plaintiff's claim appears to fall into four categories of disparate treatment:

4

disparate wages, failure to promote, disparate discipline, and discriminatory discharge.

### 1. Disparate Wages and Failure to Promote

Defendant argues, and Plaintiff concedes, that Plaintiff's claims for wage discrimination and failure to promote should be dismissed pursuant to Rule 12(b)(1). (See Doc. No. 9.) Therefore, to the extent Plaintiff alleges claims for failure to promote or wage discrimination, Defendant's Motion to Dismiss is GRANTED.

### 2. Disparate Discipline

Defendant contends that Plaintiff's disparate discipline claim should be dismissed pursuant to Rule 12(b)(6). To prove a claim of disparate discipline, Plaintiff must show: (1) membership in a protected class, "(2) the prohibited conduct in which [she] engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). Plaintiff conclusorily alleges that her supervisor "would single Plaintiff out for discipline" for using the office telephone for personal use and that she "was singled out for discipline . . . on account of her race." (Doc. No. 7, ¶¶ 14, 20.) However, her claim fails because she did not identify any actual disciplinary measures that were enforced against her. Therefore, to the extent Plaintiff alleges a claim for disparate discipline, Defendant's Motion to Dismiss is GRANTED.

### 3. Discriminatory Discharge

Defendant argues that Plaintiff's discriminatory discharge claim should be dismissed pursuant to Rule 12(b)(6) because Plaintiff failed to allege sufficient facts to show whether her job performance was satisfactory or whether similarly situated employees were treated

5

differently. (Doc. No. 8-1, 8.) To prove a claim of discriminatory discharge, Plaintiff must show that: "(1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

The Court finds that Plaintiff has adequately stated a claim for wrongful discharge under Title VII. She has alleged that she is a member of a protected class as an African-American female (Doc. No. 7, ¶ 2), that she "was consistently rated a 'successful performer'" during annual job reviews (Id., ¶ 9), and that Defendant fired her because of her race (Id., ¶ 21). Plaintiff has also alleged that similarly situated employees outside her protected class were treated differently because she "was the only African-American female under Ms. Vanderweerken's supervision" and her "white co-workers were not subject to the same . . . disparate treatment as [her]." (Id., ¶¶ 12, 20.) Taking those facts as true, Plaintiff has pled sufficient facts to allege a claim for discriminatory discharge. Therefore, Defendant's Motion to Dismiss is DENIED with regard to this claim.

**B. Hostile Work Environment**

Defendant contends that Plaintiff's hostile work environment claim should be dismissed pursuant to Rule 12(b)(6) because Plaintiff did not allege sufficient facts to establish that the harassment was sufficiently severe or pervasive. To prove a claim for hostile work environment, Plaintiff "must show that: (1) the harassment was unwelcome; (2) the harassment was based on [her race]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability

on the employer." Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).

The Supreme Court has stated that "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). The "environment must be perceived by the victim as hostile or abusive, and that perception must be objectively reasonable." Hoyle, 650 F.3d 321, 333 (4th Cir. 2011) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," including "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The "'mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." Id. at 21 (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)); see also Hopkins v. BGE, 77 F.3d 745, 754 (4th Cir.1996) ("Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace.").

Additionally, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Thus, "[i]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Knotts v. Univ. of N.C. at Charlotte, WL 650493, at *7 (W.D.N.C. Feb. 10, 2011) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

Here, Plaintiff's complaint is devoid of any facts to plausibly show that Defendant's conduct was extreme or serious enough to amount to a change in the terms and conditions of her

7

employment. Plaintiff asserts that from 2011 to her termination on June 4, 2012, she "had difficulties with Ms. Vanderweerken's behavior," but the only specific examples Plaintiff provides are that Vanderweerken said that snapping her fingers at Plaintiff to get her attention "is the only way 'you people will listen'" and that "she had to watch Plaintiff carefully because 'y'all blacks are sneaky people' and are always trying to get around the rules." (Doc No. 7, ¶¶ 13, 15.) Although Plaintiff states in her Response brief that this "is conduct that a reasonable person would find hostile and abusive," (Doc. No. 9, 5), Plaintiff offers no case law to support her argument.

Referring to Plaintiff as "you people" or "y'all blacks" is insensitive and reprehensible, but under the law, these isolated comments do not rise to the level of severity necessary to alter the terms and conditions of employment. See Roberts v. Fairfax Cnty. Pub. Schs., 858 F. Supp. 2d 605, 610 (E.D. Va. 2012) (holding that the use of the term "nigger" twice by plaintiff's supervisor was not sufficiently pervasive to alter the conditions of employment); Murphy v. Danzig, 64 F. Supp. 2d 519, 522 (E.D.N.C. 1999) (explaining that defendant's comment to plaintiff that "'you're black' and that 'you people' are used to being targeted" was "a mere offensive utterance that occurred once and did not unreasonably interfere with [plaintiff's] ability to work."); Richardson v. Safeway, Inc., 2012 WL 6607028 at *6, (E.D.N.C. Dec. 18, 2012) ("[Plaintiff's] claims that [defendant] made a racial remark . . . , that [defendant] once referred to him and other African Americans as 'you people,' and that [defendant] was rude to several black employees" are "the type of episodic, isolated remarks that have been found insufficient to support a claim for hostile work environment.").

Therefore, when considering the allegations in the light most favorable to Plaintiff,

8

Plaintiff's complaint fails to sufficiently allege a plausible hostile work environment claim. Accordingly, Defendant's Motion to Dismiss is GRANTED as to that claim.

**C. Retaliation**

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge" against his employer. 42 U.S.C. §2000-3(a). To prove a claim of retaliation, Plaintiff must allege: "(1) that she engaged in protected activity; (2) that she suffered an adverse action; and (3) that the protected activity and adverse action are causally related." Freliech v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (citing Rhoads v. FDIC, 257 F3d, 392 (4th Cir. 2001)). Plaintiff claims that Defendant terminated her employment because she: (1) filed an EEO Charge and (2) complained about her supervisor's conduct.

**1. EEO Charge**

Plaintiff alleges that she filed her EEO Charge "[o]n or about May 30, 2012," and that she was fired on June 4, 2012. (Doc. No. 7, ¶¶ 27-28.) Defendant argues, however, that Plaintiff could not have been fired due to the EEO Charge because she did not sign the Charge until June 10, 2012, six days after Defendant terminated her. (Doc. No. 8-1, 12.) To support this argument, Defendant attached Plaintiff's EEO Charge to its Motion to Dismiss. (See Doc. No. 8, Exh. A.) In her Response, Plaintiff failed to address this substantive ground raised by Defendant for dismissing the retaliation claim. Accordingly, to the extent Plaintiff alleges that Defendant retaliated against her for filing an EEO Charge, this Court finds that Plaintiff abandoned her retaliation claim and GRANTS Defendant's Motion to Dismiss.

### 2. Complaints About Vanderweerken's Behavior

To the extent Plaintiff alleges that Defendant fired her because she complained about her supervisor's conduct, Plaintiff has plead sufficient facts to survive a 12(b)(6) motion. Plaintiff claims that she complained about Vanderweerken's allegedly discriminatory behavior to Vanderweerken's superiors, Vanderweerken's "superiors notified her of Plaintiff's complaints," Vanderweerken "told Plaintiff that she would start playing 'hardball' to get rid of Plaintiff," and Plaintiff was subsequently terminated. The Court finds these factual allegations sufficient to state a plausible retaliation claim. Accordingly, to the extent Plaintiff's retaliation claim is based on her complaints about her supervisor, Defendant's Motion to Dismiss is DENIED.

### D. State Law Racial Discrimination

Plaintiff alleges that her termination "constitute[d] racial discrimination in violation of N.C. Gen. Stat. § 143-422.2." The legal standards for a state law racial discrimination claim are the same as for a Title VII discriminatory discharge claim. N.C. Dept. of Corrections v. Gibson, 308 N.C. 131  For the same reasons Plaintiff has pled sufficient factual allegations to state a claim for a federal discriminatory discharge claim, she has also pled sufficient facts to state a claim for state law racial discrimination. Therefore, Defendant's Motion to Dismiss the state law claim is DENIED.

### E. Violation of the FMLA

Defendant argues, and Plaintiff concedes, that Plaintiff's claim for violation of the FMLA should be dismissed pursuant to 12(b)(6). (See Doc. No. 9.) Therefore, to the extent Plaintiff alleges a claim for violation of the FMLA, Defendant's Motion to Dismiss is GRANTED.

### F. Timeliness

**This Court does not condone counsel's disrespectful habit of filing untimely documents. Further failures to abide by deadlines will result in sanctions.**

IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (Doc. No. 8) is GRANTED in part and DENIED in part. Specifically, with respect to Plaintiff's claims for disparate wages, failure to promote, disparate discipline, hostile work environment, retaliation based on filing an EEO Charge, and violation of the FMLA, the Motion to Dismiss is GRANTED, and those claims are DISMISSED. With respect to Plaintiff's claims for discriminatory discharge, retaliation based on complaints about Vanderweerken's behavior, and state law racial discrimination, the Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Signed: October 15, 2013

Frank D. Whitney
Chief United States District Judge